UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-20355-BLOOM/Elfenbein

MICHAEL RIFFLE,

    Plaintiff,

v.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINE

    Defendant.
_____/

**ORDER ON MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**THIS CAUSE** is before the Court upon Defendant Carnival Corporation's ("Carnival") Motion to Dismiss Plaintiff's Complaint, ECF No. [5] ("Motion"). Plaintiff Michael Riffle filed a Response in Opposition ("Response"), ECF No. [7], to which Carnival filed a Reply, ECF No. [9]. The Court has reviewed the Complaint, the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Carnival's Motion is denied.

**I.    BACKGROUND**

Plaintiff filed his Complaint against Carnival under maritime law, asserting a claim for Vicarious Liability (Count I) and Negligence (Count II). *See* ECF No. [1]. Plaintiff alleges that Carnival is a cruise line company that "owned, operated, maintained, controlled, and possessed a vessel named *Carnival Dream*," the cruise ship Plaintiff was aboard when he suffered his injuries. *Id.* at ¶ 8. *Carnival Dream* is "equipped with an amusement theme[ ] park for passenger use," and includes a "waterslide available for passengers to descend." *Id.* at ¶ 13. The slide has a shutdown lane designed to slow down riders as they reach the bottom of the slide. *See id.* at ¶ 18. The base

of the "shutdown lane is enclosed on four sides by a blue wall which stands approximately two to three feet tall." *Id.* at ¶ 17. The waterslide is under the "exclusive control of [Carnival] and/or its employees." *Id.* at ¶ 14. Accordingly, Carnival "has policies and procedures for operation of the waterslide . . . which provide for stationing an attendant at the top and bottom of the slide to ensure passenger safety and maintenance of the water levels in the slide." ECF No. [1] at ¶ 19. The policies provide that one of the duties of the attendants is to monitor "water levels in [the] shutdown lane" to "make sure [the] shutdown lane is operating correctly," and "[d]elay dispatch of [the] next rider until [the] water level is at proper depth." *Id.* at ¶ 21. Carnival's policies and procedures also instruct "employees that 'shutdown lanes require extra attention to make sure water levels are at correct operating levels, [because] too little or too much depth in the shutdown lane will affect braking distance and characteristics.'" *Id.* at ¶ 21.

On the day of the incident, Plaintiff decided he would descend Carnival's waterslide; however, the water levels on the slide were too low. The Carnival employees stationed on the slide nevertheless "deliberately and recklessly instructed Plaintiff to proceed with using the waterslide . . . presenting a dangerous condition by which a patron on the slide would not be slowed at the bottom of the slide." *Id.* at ¶ 23. Consequently, Plaintiff entered the slide as instructed, "and upon reaching the bottom (shutdown lane) of the slide," Plaintiff "was not sufficiently slowed down, causing Plaintiff's feet to violently strike the end of the waterslide shutdown lane." *Id.*

Plaintiff now contends that Carnival crewmembers were negligent by failing "to exercise reasonable care for the safety of C[arnival] passengers including the Plaintiff." *Id.* at ¶ 25. Plaintiff claims the employees breached their duty of care by either (1) failing "to monitor the water so as to allow safe ingress and egress from the slide;" (2) failing "to monitor the water levels of the slide and shutdown lane;" (3) failing "to warn the Plaintiff of the presence of the hazardous or dangerous

2

condition of the waterslide;" (4) failing to correct "the improper water levels in the waterslide and shutdown lane before Plaintiff used the slide;" (5) failing "to implement and/or follow and/or enforce policies and procedures regulating safe slide use and operation; or (6) [i]nstructing Plaintiff to use the waterslide when it was unsafe to do so." ECF No. [1] at ¶ 26. Plaintiff maintains that since the negligent conduct was all done by Carnival crew members in furtherance of the ship's business, Carnival "is vicariously liable for their failure to exercise reasonable care and consequent negligence." *Id.* at ¶ 27.

Plaintiff also contends Carnival is directly liable for his injuries. *See id.* at ¶¶ 29-40. According to Plaintiff, Carnival "knew of the dangerous condition [that] occurs when proper water levels are not maintained in the slide and shutdown lane" as evidenced by Carnival's internal policies and its decision to station crew members on the water slide to monitor and control water levels. *Id.* at ¶ 31. Furthermore, Plaintiff asserts that Carnival "also knew of the dangerous condition because it has had many incidents in the past in which passengers were injured when proper levels were not monitored and/or maintained in the waterslide and shutdown lane." *Id.* at ¶ 32.

Carnival now seeks dismissal of the Complaint, contending that Plaintiff has failed to adequately allege either a vicarious liability or a direct negligence claim. *See* ECF No. [5]. Carnival argues that both counts fail to state a claim upon which relief may be granted because Plaintiff fails to sufficiently allege that Carnival had actual or constructive notice of the dangerous condition. *See id.* at 4.

Plaintiff responds that he has properly asserted a claim of vicarious liability because there is no notice requirement for a vicarious liability claim and he has sufficiently identified the negligent employees who caused his injuries. *See* ECF No. [7]. Regarding his direct negligence

claim, Plaintiff contends he has adequately alleged actual notice of the waterslide's dangerous condition given that there were Carnival employees stationed at the top and bottom of the slide who, under Carnival's policies, were responsible for ensuring that the slide maintained an adequate water level. *See id.* at 4-5.

## II. LEGAL STANDARD

### A. Failure to State a Claim

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Additionally, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. If the allegations satisfy the elements of the claims asserted, a defendant's motion to dismiss must be denied. *See id.* at 556.

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009)

("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."); *Iqbal*, 556 U.S. at 678.

## B. General Maritime Law

In cases involving alleged torts "committed aboard a ship sailing in navigable waters," the applicable substantive law is general maritime law, the rules of which are developed by the federal courts. *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989) (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628 (1959)); *see also Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990) ("Because this is a maritime tort, federal admiralty law should control. Even when the parties allege diversity of citizenship as the basis of the federal court's jurisdiction (as they did in this case), if the injury occurred on navigable waters, federal maritime law governs the substantive issues in the case."). In the absence of well-developed maritime law, courts may supplement the maritime law with general common law and state law principles. *See Smolnikar v. Royal Caribbean Cruises, Ltd.*, 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2011). "In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Chaparro,* 693 F.3d at 1336 (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)).

"To prevail on a negligence claim under a theory of direct liability, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'" *Guevara v. NCL (Bah.) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (quoting *Chaparro*, 693 F.3d at 1336). The duty of reasonable care requires, "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322. "In other words, a cruise ship operator's duty is to

5

shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). Thus, a cruise-ship operator's liability often "hinges on whether it knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720.

Alternatively, a cruise ship operator may also be vicariously liable "for its employee's torts if committed during the scope of the employment. *Yusko v. NCL (Bah.), Ltd.*, 4 F.4th 1164 (11th Cir. 2021) (citing Restatement (Third) Of Agency § 7.07 (2006)); *see Mitchell v. Carnival Corp.*, No. 24-CV-23407, 2024 WL 4818486, at *3 (S.D. Fla. Nov. 18, 2024) ("To establish a shipowner's vicarious liability in a maritime-tort case, a plaintiff must show that a tortfeasor employee committed 'negligent acts . . . within the scope of employment.'") (quoting *Branyon v. Carnival Corp.*, Case No. 24-cv-20576, 2024 WL 3103313, at *4 (S.D. Fla. June 24, 2024)). Unlike direct liability claims, a plaintiff need not allege that the cruise ship operator had actual or constructive notice of the alleged dangerous condition. *See id.* at 1170.

### III.   DISCUSSION

#### A. Counts I and II: Vicarious Liability and Negligence—Notice

Carnival contends that Counts I and II should be dismissed because Plaintiff fails to allege that Carnival had actual or constructive notice of the allegedly hidden, dangerous condition, i.e., the low water levels that caused Plaintiff to violently strike the end of the waterslide shutdown lane. ECF No. [5]. Carnival contends Plaintiff's Complaint lacks any specific allegations demonstrating constructive notice and instead "relies on conclusory assertions and speculation, which courts have repeatedly deemed insufficient." *Id.* at 4. Although Plaintiff alleges that Carnival was on notice due to similar prior waterslide incidents, Carnival argues the conclusory

6

allegation is deficient as it fails to specify "any facts regarding these incidents, such as their nature, timing, or similarity to the present case." *Id.* at 5.

Furthermore, Plaintiff's assertion that there were policies and procedures in place and that "Carnival crew members observed the dangerous condition" are similarly insufficient to plausibly allege notice. *Id.* According to Carnival, these are boilerplate allegations that do not point to facts showing that the employees were aware of the low water levels, nor do they show how the employees' conduct violated Carnival's policies and procedures. *See id.* Given these generic and vague allegations, Plaintiff fails to "establish how Carnival had actual or constructive notice of any dangerous conditions." *Id.* at 6.

Carnival also argues Plaintiff is not able to avoid the notice requirement by asserting one of his negligence claims under a theory of vicarious liability. *See id.* at 6. Although Carnival acknowledges "a passenger need not establish that the shipowner had notice of a risk-creating condition if the claim is based on an employee's negligence under a theory of vicarious liability," Plaintiff has not adequately alleged a proper vicarious liability claim here. ECF No. [5] at 6-7. Carnival argues that "Plaintiff's Complaint neither asserts a distinct vicarious liability claim nor identifies a negligent employee." *Id.* at 7. Accordingly, Plaintiff's claim in Count I "amounts to a classic premises liability claim" that requires Plaintiff to show either actual or constructive notice to survive the instant Motion to Dismiss. *Id.*

Plaintiff responds that he has adequately alleged valid claims in both counts. Regarding Count I, Plaintiff contends there is no need to establish that Carnival had actual or constructive notice because Count I is a proper vicarious liability claim. *See* ECF No. [7] at 3. By pleading that "the attendant crew members were negligent in operating and supervising the waterslide," Plaintiff maintains that his claim cannot be mischaracterized as a direct liability claim. *Id.* at 3-4.

Plaintiff also contends that his negligence claim in Count II should survive as he has "included sufficient allegations that [Carnival] had notice of the dangerous condition that caused Plaintiff's injuries." *Id.* at 4. Plaintiff argues that his allegations that waterslide attendants were stationed at the top and bottom of the slide and that Carnival had policies directing waterslide attendants to monitor water levels and take corrective action as needed demonstrate Carnival's actual knowledge of the dangerous condition. *Id.* at 5.

### a. No Notice Required for Vicarious Liability Claim

The Court first analyzes whether Plaintiff has properly alleged a vicarious liability claim obviating the need to allege that Carnival had actual or constructive notice of the unreasonably low water levels in the waterslide prior to the incident.

Unlike a direct liability claim, the Eleventh Circuit has held that for vicarious liability, "a passenger need not establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees." *Yusko v. NCL (Bah.)*, 4 F.4th 1164, 1170 (11th Cir. 2021). While plaintiffs are unable to reframe their negligent failure to maintain claims as a vicarious liability claim to work around the notice requirement, the holding in *Yusko* does not foreclose a plaintiff from simultaneously bringing a direct liability and vicarious liability claim against a shipowner for its employees' and its own negligent maintenance or negligent failure to warn. *See, also, Green v. Carnival*, 614 F. Supp. 3d 1257, 1266-67 (S.D. Fla. 2022); *Branyon*, 2024 WL 3103313, at *4 ("Far from implying that a plaintiff is barred from asserting negligent-maintenance or negligent failure-to-warn claims under a theory of vicarious liability, *Yusko* made clear that a 'plaintiff is the master of his or her complaint and may choose to proceed under a theory of direct liability, vicarious liability, or both.'") (quoting *Yusko*, 4 F.4th at 1170). Instead, *Yusko* simply clarifies that a plaintiff may not assert a vicarious liability claim to

8

avoid the notice requirement of a direct liability claim by alleging that a non-specific group of employees negligently caused the plaintiff's injuries. *See Davis v. Carnival Corp.*, Case No. 22-cv-24109, 2023 WL 5955700, at *3-4 (S.D. Fla. July 31, 2023). Therefore, so long as Plaintiff has sufficiently identified a negligent Carnival employee acting within the scope of his or her employment, the vicarious liability claim will survive dismissal. *See Green*, 614 F. Supp. 3d at 1267; *Mathis v. Classica Cruise Operator Ltd. Inc.*, Case No. 23-cv-81479, 2024 WL 1430508, at *4, n. 2 (S.D. Fla. Apr. 1, 2024).

Here, the Complaint alleges that the employees stationed at the waterslide "deliberately and recklessly instructed Plaintiff to proceed with using the waterslide" despite the dangerously low water levels on the slide. ECF No. [1] at ¶ 23. Because the employees' conduct was done "in furtherance of the ship's business, the Complaint asserts that Carnival "is vicariously liable for their failure to exercise reasonable care and consequent negligence." *Id.* at ¶ 27. Based on those allegations, Plaintiff has articulated a distinct vicarious liability claim[1] that sufficiently identifies specific negligent employees (the waterslide employees) who proximately caused Plaintiff's injuries. Although Plaintiff does not name a particular employee, such specificity is not necessary to defeat a motion to dismiss. *See Green*, 614 F. Supp. 3d at 1267 ("The Court is unaware of any legal authority that requires the plaintiff to allege the names of the employees who were negligent at this stage of the proceedings."). Courts in this district have found that a plaintiff's vicarious liability claim will survive even where a plaintiff identifies the employee by ways of "roles or tasks." *Goroni v. Carnival Corp.*, Case No. 1:24-cv-22995, 2024 WL 5373964, at *26 (S.D. Fla.

---

[1] The Court is unpersuaded by Carnival's argument that Plaintiff has not articulated a "distinct" vicarious liability claim. Simply because the facts underlying his vicarious liability claim may support a direct liability claim under a theory of premises liability does not mean that Plaintiff may not assert a vicarious liability claim based on the employees' negligent conduct. A plaintiff is the master of their complaint and is not forced to proceed under only one theory of liability. *See Hunter v. Carnival Corp.*, 609 F. Supp. 3d 1305, 1309 (S.D. Fla. 2022) (quoting *Yusko*, 4 F.4th at 1170).

9

Case No. 25-cv-20355-BLOOM/Elfenbein

Dec. 9, 2024); *see also Mathis*, Case No. 23-cv-81479, 2024 WL 1430508, at *4 n. 2. ("A complaint in a vicarious liability case need not identify the negligent agent by name, so long as it identifies the agent by other means such as job duties or actions committed by the agent."); *Mclean v. Carnival Corp.*, No. 22-23187-CIV, 2023 WL 372061, at *3 (S.D. Fla. Jan. 24, 2023) ("While the Plaintiff does not specifically name the crewmembers, there is no requirement in the law that she do so, and it would seem fundamentally unfair to require the Plaintiff to remember the names of each of the crewmembers involved in the incident simply to file a complaint. There were, undoubtedly, specific crewmembers involved in the incident that the Plaintiff alleges."); *Mitchell v. Carnival Corp.*, Case No. 24-cv-23407, 2024 WL 4818486, at *3 (S.D. Fla. Nov. 18, 2024) ("Mitchell doesn't need to identify a specific crewmember in her vicarious-liability claim."). Accordingly, because Plaintiff has identified negligent conduct of specific Carnival employees[2] done within the scope of their employment, Carnival's Motion to Dismiss Count I is denied.[3]

### b. Actual Notice Established for Direct Liability Claim

The Court next considers Plaintiff's direct liability claim in Count II. Under a direct theory of liability, a cruise ship operator only has a duty to warn or otherwise protect a passenger from danger if the operator has "actual or constructive notice of the unsafe condition." *Horne v. Carnival Corp.*, 741 F. App'x 607, 608 (11th Cir. 2018) (citing *Keefe*, 867 F.2d at 1322); *Yusko*, 4 F.4th at 1167 ("[P]assenger cannot succeed on a maritime negligence claim against a shipowner

---

[2] The Court notes that the employees' directive for Plaintiff to go down the waterslide despite the low water levels is clearly an allegation of negligence based on the employees' conduct as opposed to a classic allegation of premises liability. Although the other allegations in Count I wade closer to a direct liability claim, those additional allegations are still based on the crewmembers' conduct and their negligence in carrying out the corrective measures put in place by Carnival. As such, the allegations in Count I support a vicarious liability claim.

[3] Moreover, this is not a situation where Plaintiff is intentionally attempting to avoid the notice requirement necessary for a direct liability claim as Plaintiff asserted a direct liability claim in Count II which would require Plaintiff to adequately allege notice. *See Green*, 614 F. Supp. 3d 1257, 1267-68.

unless that shipowner had actual or constructive notice of a risk-creating condition."). "Actual notice exists when the defendant knows about the dangerous condition" and "[c]onstructive notice exists where 'the shipowner ought to have known of the peril to its passengers, the hazard having been present for a period of time so lengthy as to invite corrective measures.'" *Holland v. Carnival Corp.*, 50 F.4th 1088, 1095 (11th Cir. 2022) (quoting *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) and citing *Guevara*, 920 F.3d at 720).

The Court finds that Plaintiff has adequately pled sufficient facts to establish actual notice in Count II. Plaintiff alleges that prior to entering the waterslide, Carnival employees were stationed at the top and bottom of the waterslide. *See* ECF No. [1] at ¶ 19. According to Carnival's policies and procedures, these employees were responsible for monitoring the water levels in the shutdown lane. *Id.* at ¶ 20-21. Therefore, because a key function of the waterslide employees' job was to ensure the water levels were at a safe level, the Court may reasonably infer the employees' presence at the waterslide necessarily would have put Carnival on notice, assuming that the water levels were, in fact, dangerously low. *See St. Johns Vein Center, Inc. v. StreamlineMD LLC*, 347 F. Supp. 3d 1047, 1052 (M.D. Fla. 2018) ("In ruling on a motion to dismiss, . . . all reasonable inference should be drawn in favor of the plaintiff.") (citing *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam)). While Carnival insists Plaintiff's allegations are conclusory, the district court in *Anders v. Carnival Corp.*, found the almost identical allegations were sufficient to establish actual notice. *See* Case No. 23-21367, 2023 WL 4252426, at *6 (S.D. Fla. June 29, 2023). In *Anders*, the district court explained that by the defendant putting in a corrective measure—"a crew member [ ] stationed at the top of the slide to ensure that precisely the type of accident [the p]laintiff suffered did not occur," the Court could reasonably infer the cruise ship operator had actual notice of the dangerous condition. *Anders*, 2023 WL 4252426, at

11

*6; *see Cole v. Carnival Corporation*, Case No. 23-60532, 2024 WL 2229991, at *4-5 (S.D. Fla. May 17, 2024) (finding that evidence of protective measures sufficient to establish actual notice of a known dangerous condition); *Lawing v. Carnival Corp.*, Case No. 24-cv-22101, 2024 WL 4723114, at *7 (S.D. Fla. Nov. 8, 2024) (same). Therefore, despite Carnival's insistence to the contrary, Plaintiff does not need to allege precise details to establish actual notice at this stage. *See Twombly*, 550 U.S. at 555 ("[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]"). Accordingly, Carnival's Motion to Dismiss Count II of the Complaint is denied.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Carnival's Motion to Dismiss Plaintiff's Complaint, **ECF No. [5]**, is **DENIED**.

2. Carnival shall file an Answer to Plaintiff's Complaint no later than **May 1, 2025**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 17, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record